# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| TERESA SPAGNA, | |
| Plaintiff, | 8:19CV481 |
| vs. | |
| PHI KAPPA PSI, INC., a non-profit corporation; CREIGHTON UNIVERSITY BETA CHAPTER OF THE PHI KAPPA PSI FRATERNITY, an unincorporated association; PARK AVENUE PHI PSI HOUSE, INC., a non-profit corporation; COLLIN GILL, individually and as an agent of Phi Kappa Psi Fraternity, Inc. and the Creighton University Beta Chapter of the Phi Kappa Psi Fraternity; DANIEL W. TIFT, individually and as an agent of Phi Kappa Psi Fraternity, Inc. and the Creighton University Beta Chapter of the Phi Kappa Psi Fraternity; JONAH M. BUSS, individually and as an agent of Phi Kappa Psi Fraternity, Inc. and the Creighton University Beta Chapter of the Phi Kappa Psi Fraternity; CODY M. CASPER, individually and as an agent of Phi Kappa Psi Fraternity, Inc. and the Creighton University Beta Chapter of the Phi Kappa Psi Fraternity; TROY M. TAYLOR, individually and as an agent of Phi Kappa Psi Fraternity, Inc. and the Creighton University Beta Chapter of the Phi Kappa Psi Fraternity; ALAN J. ANDERSON, individually and as an agent of Phi Kappa Psi Fraternity, Inc. and the Creighton University Beta Chapter of the Phi Kappa Psi Fraternity; DAVID MELER, individually and as an agent of Phi Kappa Psi Fraternity, Inc. and the Creighton University Beta Chapter of the Phi Kappa Psi Fraternity; and BRENDAN TOBIN REZICH, individually and as an agent of Phi Kappa Psi Fraternity, Inc. and the | MEMORANDUM AND ORDER |

| Creighton University Beta Chapter of the Phi Kappa Psi Fraternity; |
| Defendants. |

This matter is before the Court on Motions to Dismiss filed by Defendants Jonah M. Buss, ECF No. 19, and Phi Kappa Psi, Inc. (National Fraternity), ECF No. 29. For the following reasons, the motions will be granted.

## BACKGROUND

The following facts are those alleged in the Complaint, ECF No. 1, and are assumed true for purposes of this motion.

### I. Parties

Defendants are all members of, or organizations associated with, the fraternity Phi Kappa Psi. The National Fraternity is an Indiana non-profit corporation with its principal place of business in Indianapolis, Indiana. The National Fraternity operates chapters at universities throughout the country. One such chapter is Defendant Creighton University Beta Chapter of the Phi Kappa Psi fraternity (Phi Psi). Phi Psi members are also members of the National Fraternity.

Defendant Park Avenue Phi Psi House, Inc. (Park Avenue), a Nebraska non-profit corporation, owns, manages, and governs the Phi Psi chapter house located on Farnam Street in Omaha, Nebraska (Chapter House). Park Avenue is managed by a board of directors composed of Phi Psi members and alumni.

Defendants Colin Gill, Daniel Tift, Jonah Buss, Cody Casper, Troy Taylor, Alan Anderson, David Meler, and Brendan Rezich are citizens of Minnesota, Nebraska,

California, Wisconsin, and Ohio. They are officers of Phi Psi and members of the National Fraternity. Defendants John Does 1-10 are members of Phi Psi and the National Fraternity.

Plaintiff Teresa Spagna is a citizen of Illinois and the victim of Defendants' alleged negligence.

## II. Factual History

In January 2017, fraternity rush activities began on the campus of Creighton University (Creighton). The rush process is a series of events in which students attempt to solicit bids from fraternities, inviting them to join. Christopher Wheeler participated in rush activities; Phi Psi extended him a bid; and he accepted.

On January 30, 2017, Phi Psi began its initiation process. The members who were to be initiated (pledges) surrendered their cell phones and were directed to keep all activities secret. The initiation process involved the consumption of alcohol by minors, including forced alcohol consumption to the point of vomiting and loss of consciousness. Wheeler participated in these activities despite being underage.

On February 10, 2017, Phi Psi members took the pledges to the Chapter House to play drinking games. While at the Chapter house, Wheeler was encouraged to consume alcohol. Wheeler consumed alcohol that he brought, and he was provided alcohol by other members.

That same evening, Phi Psi members took the pledges, many of whom were underage, to a local bar. After leaving the bar, the members took the pledges back to the Chapter House to continue drinking. Gill, the president of Phi Psi, invited Wheeler to drink with him and other members in Gill's room. Gill gave Wheeler at least two beers.

3

While in Gill's room, a Phi Psi member produced a water bong used for smoking marijuana. The Phi Psi members passed the bong around and encouraged Wheeler to smoke marijuana. He did so.

Around 1:00 a.m. on February 11, 2017, Phi Psi members took Wheeler back to Creighton's campus. Wheeler appeared to be confused, acting out of character, and intoxicated to the level of belligerence.

Spagna lived on Creighton's campus in Gallagher Hall on a floor where males were not allowed without a female escort who lived on the floor. In the early morning hours of February 11, 2017, Spagna was ill and left her door unlocked so her friends could check on her when they returned to Gallagher Hall.

Wheeler wandered the hallways of Gallagher Hall after he was dropped off on campus. He entered Spagna's room without permission. He appeared not to know where he was. Spagna and Wheeler did not know each other. Spagna was startled by Wheeler and screamed. Wheeler appeared visibly drunk and disoriented and smelled of alcohol.

Spagna told Wheeler to leave. He stood in her room for several minutes, mumbling to himself. He then turned to leave. As he left, Spagna noticed that Wheeler had dropped his keys. She grabbed the keys and approached Wheeler. As she approached him, Wheeler turned suddenly, and cut Spagna below the jawline with a pocketknife, leaving a five-inch cut in her neck. Spagna has since required medical and psychological treatment.

### III. Procedural History

Spagna brought this action on October 31, 2019. Compl., ECF No. 1. Buss filed a Motion to Dismiss on December 16, 2019, ECF No. 19. The National Fraternity filed a Motion to Dismiss on December 26, 2019, ECF No. 29.

## STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy this requirement, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Corrado v. Life Inv'rs Ins. Co. of Am.*, 804 F.3d 915, 917 (8th Cir. 2015) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678), *cert. denied*, 135 S. Ct. 2941 (2015). The complaint's factual allegations must be "sufficient to 'raise a right to relief above the speculative level.'" *McDonough v. Anoka Cty.*, 799 F.3d 931, 946 (8th Cir. 2015) (quoting *Twombly*, 550 U.S. at 555). The Court must accept factual allegations as true, but it is not required to accept any "legal conclusion couched as a factual allegation." *Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 373 (8th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678). Thus, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ash v. Anderson Merchandisers, LLC*, 799 F.3d 957, 960 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678), *cert. denied*, 136 S. Ct. 804 (2016).

On a motion to dismiss, courts must rule "on the assumption that all the allegations in the complaint are true," and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 555 & 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Mickelson v. Cty. of Ramsey*, 823 F.3d 918, 923 (8th Cir. 2016) (alteration in original) (quoting *Iqbal*, 556 U.S. at 679).

## DISCUSSION

The Complaint alleges the National Fraternity, Phi Psi, and its members and affiliated organizations negligently acquiesced to, condoned, and participated in the events that culminated in Spagna's injuries.

### I. The National Fraternity

The National Fraternity argues the Complaint does not allege facts sufficient to establish the National Fraternity owed any duty to Spagna and, even if it had a duty, any breach of that duty did not proximately cause Spagna's injuries.

Under Nebraska law, to state a claim for negligence, a plaintiff must allege "a legal duty owed by the defendant to the plaintiff, a breach of such duty, causation, and damages." *A.W. v. Lancaster Cty. Sch. Dist. 0001*, 784 N.W.2d 907, 913 (Neb. 2010) (citing *Ehlers v. State*, 756 N.W.2d 152 (Neb. 2008)).

The Nebraska Supreme Court has adopted the Third Restatement definition of duty. *A.W.*, 784 N.W.2d at 918 ("[W]e find the clarification of the duty analysis contained in the Restatement (Third) of Torts, § 7, to be compelling, and we adopt it." (citing

*Thompson v. Kaczinski*, 774 N.W.2d 829 (Iowa 2009))). The Third Restatement states that "[a]n actor ordinarily has a duty to exercise reasonable care when the actor's conduct creates a risk of physical harm." Restatement (Third) of Torts: Liab. for Physical & Emotional Harm § 7. "The conduct that creates the risk must be some affirmative act, even though the negligence might be characterized as a failure to act." § 6 cmt. f. The affirmative act creating the risk need not be negligent; "[f]or example, an automobile driver creates risk to others merely by driving, although the negligence may be failing to employ the brakes at an appropriate time or failing to keep a proper lookout." *Id.* "[I]n the absence of conduct creating a risk of harm to others, an actor ordinarily has no duty of care to another." *Bell v. Grow With Me Childcare & Preschool LLC*, 907 N.W.2d 705, 714 (Neb. 2018) (quoting Restatement (Third) of Torts: Liab. for Physical & Emotional Harm § 7 cmt. l).

The Complaint does not allege the National Fraternity engaged in any affirmative conduct that created a risk of harm under § 7. "When the only role of the actor is failing to intervene to protect others from risks created by third persons, the actor's nonfeasance cannot be said to have created the risk." *Bell*, 907 N.W.2d at 718 (citing Restatement (Third) of Torts: Liab. for Physical & Emotional Harm § 7 cmt. l). The Complaint alleges that the National Fraternity failed to supervise and oversee Phi Psi, and had it intervened, it could have prevented the harm. Compl. ¶ 59, ECF No. 1.

Under the Third Restatement and Nebraska law, allowing a risk to continue unabated does not constitute an affirmative act for purposes of determining a duty. *See id.* at 719 ("[W]hatever the childcare center's reasons may have been for not reporting Cullen's behavior, their failure to do so did not create or increase the risk Cullen posed,

7

rather it allowed the risk to continue unabated."); *see also* Restatement (Third) of Torts: Liab. for Physical & Emotional Harm § 7 cmt. o ("An actor's conduct creates a risk when the actor's conduct or course of conduct results in greater risk to another than the other would have faced absent the conduct."). Therefore, the Complaint fails to allege that the National Fraternity owed Spagna a duty under section 7 of the Third Restatement.

In lieu of affirmative conduct creating a risk, an affirmative duty may also arise out of a special relationship between the parties. *Bell*, 907 N.W.2d at 719 ("Even when an actor's conduct does not create a risk of physical harm, the actor may still owe an affirmative duty of care based on a special relationship." (citing *Rodriguez v. Catholic Health Initiatives*, 899 N.W.2d 227 (Neb. 2017)). When no affirmative act created the risk of harm, "[c]ourts may decide to recognize other areas for affirmative duties under § 37,[1] just as they may decide—for reasons of policy or principle—to recognize additional no-duty rules under § 7." *Bell*, 907 N.W.2d at 715–16 (citing Restatement (Third) of Torts: Liab. for Physical & Emotional Harm § 37, cmt. b).

Traditionally, social host liability has been disfavored for policy reasons.[2] The Nebraska Supreme Court has declined to recognize similar types of liability, absent a legislative directive, determining that such policy questions are best addressed by the legislature. *See Arant v. G.H., Inc.*, 428 N.W.2d 631, 631–32 (Neb. 1988). Spagna argues that the legislature provided for liability against social hosts when it passed the

---

[1] "An actor whose conduct has not created a risk of physical or emotional harm to another has no duty of care to the other unless a court determines that one of the affirmative duties provided in §§ 38–44 is applicable." Restatement (Third of Torts: Liab. for Physical & Emotional Harm § 37. The duties provided in sections 38–44 are "not an exclusive list." § 37 cmt. b.

[2] *See* § 7 cmt. a (discussing policy considerations regarding social host liability).

8

Minor Alcoholic Liquor Liability Act (the Act), 2007 Neb. Laws L.B. 573 (codified as amended at Neb. Rev. Stat. § 53-401 *et seq.*).

The Act states that "[a]ny person who sustains injury . . . as a proximate result of the negligence of an intoxicated minor shall have . . . a cause of action against: (1) A social host who allowed the minor to consume alcoholic liquor in the social host's home or on property under his or her control . . . ." Neb. Rev. Stat. § 53-404. The Act further defines a social host as "any person who knowingly allows consumption of alcoholic liquor in his or her home or on property under his or her control by one or more minors." § 53-403(7).

Assuming for purposes of this motion that the Act creates a social-host duty for purposes of common law negligence, the Complaint does not allege the National Fraternity had a social-host relationship with Wheeler as defined by the Act. For the National Fraternity to be a social host under the Act, it must have "knowingly" allowed Wheeler to consume alcohol in the Chapter House. *Id.*

The Complaint purports to allege that the National Fraternity, as part of the "Phi Kappa Psi Defendants," knowingly consented to the "[c]onsumption of alcohol by minors on Phi Psi property," during the 2017 rush, and had knowledge that "Wheeler [wa]s allowed to consume alcohol at the Chapter House . . . ." Compl. ¶¶ 69, 82, ECF No. 1. However, these are conclusory allegations the Court need not accept. No facts are alleged to suggest how the National Fraternity—an Indiana Corporation with no physical presence in Omaha, Nebraska—knew that Wheeler was consuming alcohol in the Chapter House. *Cf. Shaheen v. Yonts*, 394 F. App'x 224, 230 (6th Cir. 2010) ("Without a physical presence at a local chapter, the imposition of a duty to supervise and or control

9

is illogical and untenable."); *Walker v. Phi Beta Sigma Fraternity (Rho Chapter)*, 706 So.2d 525, 529–30 (La. Ct. App. 1997) ("[T]he National Fraternity was not in a position to control the action of its chapters on a day-to-day basis [because it] is located in the District of Columbia, while the local chapter is located on Southern's Campus in Baton Rouge, Louisiana.") (citations omitted); *Millard v. Osborne*, 611 A.2d 715, 719–20 (Pa. Super. Ct. 1992) ("[T]he national fraternity is not in a position to control the action of its chapters. It is based in Indiana, and Thiel College is in Greenville, Pennsylvania.").

At most, the Complaint alleges the National Fraternity was aware generally of the consumption of alcohol by members of Phi Psi in the past[3] and did not properly supervise Phi Psi after disciplinary actions taken by Creighton. *See* Compl. ¶¶ 58–59. The imposition of social-host liability is a question of policy to be addressed by the legislature, and the legislature has seen fit to add a scienter requirement before such duty will be imposed. The Complaint does not allege facts from which it can be inferred that the scienter element can be satisfied as to the National Fraternity. Therefore, the National fraternity did not have a duty to prevent the harmful acts caused by Wheeler, and its Motion to Dismiss will be granted.

## II.     Jonah M. Buss

Buss argues that the Complaint fails to give him notice as to the claims against him with sufficient specificity and should be dismissed.

A "pleading must at a minimum be sufficient to give the defendant notice of the claim." *Tatum v. Iowa*, 822 F.2d 808, 810 (8th Cir. 1987) (per curiam) (citing *Conley v.*

---

[3] The Complaint alleges that, in 2016, the administration found Phi Psi violated the Creighton Student Discipline Policy, Greek Event Guidelines, and State law. Compl. ¶ 55, ECF No. 1. The administration notified the National Fraternity of its findings. Compl. ¶ 58, ECF No. 1.

*Gibson*, 355 U.S. 41, 48 (1957)). In *Tatum* the Eighth Circuit affirmed the district court's dismissal for failure to state a claim. It found that the complaint appeared to state facts which, if true, would support the plaintiff's discrimination claim, but because he failed to "plead how the defendants are responsible to him for his . . . claim [he was] not entitled to relief from these defendants." *Tatum*, 822 F.2d at 810 (citing *Rhodes v. Houston*, 202 F. Supp. 2d 624, 629, 638 (D. Neb. 1962), *aff'd*, 309 F.2d 959 (8th Cir. 1962) (per curiam)).

The Complaint refers collectively to Defendants Gill, Tift, Buss, Casper, Taylor, Anderson, Meler, Rezich, and Does 1–10 as "Individual Defendants." The Individual Defendants and the National Fraternity, Phi Psi, and Park Ave are collectively referred to as "Phi Kappa Psi Defendants." The only time Buss is mentioned in the Complaint is as a member of a group of eighteen individuals and three corporate entities. The Complaint does not provide Buss with sufficient notice to allow him to respond to the claims against him. Therefore, Buss's Motion to Dismiss will be granted.

Accordingly,

IT IS ORDERED:

1. The Motion to Dismiss, ECF No. 19, filed by Jonah M. Buss is granted;

2. The Motion to Dismiss, ECF No. 29, filed by the Phi Kappa Psi, Inc. is granted;

3. This action is dismissed, without prejudice, as to Defendants Jonah M. Buss and Phi Kappa Psi, Inc.; and

4. The Clerk of Court is directed to amend the caption to reflect the dismissal of these Defendants.

Dated this 12th day of February 2020.

BY THE COURT:

s/Laurie Smith Camp
Senior United States District Judge