# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| TERESA SPAGNA, | |
| Plaintiff, | 8:19CV481 |
| vs. | |
| PARK AVENUE PHI PSI HOUSE, INC., a non-profit corporation; COLLIN GILL, individually and as an agent of Phi Kappa Psi Fraternity, Inc. and the Nebraska Beta Chapter of Phi Kappa Psi Fraternity; DANIEL W. TIFT, individually and as an agent of Phi Kappa Psi Fraternity, Inc. and the Nebraska Beta Chapter of Phi Kappa Psi Fraternity; JONAH M. BUSS, individually and as an agent of Phi Kappa Psi Fraternity, Inc. and the Nebraska Beta Chapter of Phi Kappa Psi Fraternity; CODY M. CASPER, individually and as an agent of Phi Kappa Psi Fraternity, Inc. and the Nebraska Beta Chapter of Phi Kappa Psi Fraternity; TROY M. TAYLOR, individually and as an agent of Phi Kappa Psi Fraternity, Inc. and the Nebraska Beta Chapter of Phi Kappa Psi Fraternity; ALAN J. ANDERSON, individually and as an agent of Phi Kappa Psi Fraternity, Inc. and the Nebraska Beta Chapter of Phi Kappa Psi Fraternity; DAVID MELER, individually and as an agent of Phi Kappa Psi Fraternity, Inc. and the Nebraska Beta Chapter of Phi Kappa Psi Fraternity; BRENDAN TOBIN REZICH, individually and as an agent of Phi Kappa Psi Fraternity, Inc. and the Nebraska Beta Chapter of Phi Kappa Psi Fraternity; PHI KAPPA PSI FRATERNITY, INC., a non-profit Corporation; and NEBRASKA BETA CHAPTER OF PHI KAPPA PSI FRATERNITY, an unincorporated association; | MEMORANDUM AND ORDER |
| Defendants. | |

This matter is before the Court on Motions to Dismiss filed by Defendants Brendan Rezich, ECF No. 107; Troy Taylor, ECF No. 109; Collin Gill, ECF No. 116; Park Avenue Phi Psi House, Inc. (Park Avenue), ECF No. 129; and Phi Kappa Psi Fraternity, Inc. (National Fraternity), ECF No. 131. For the following reasons, the motions will be granted.

## BACKGROUND

The following facts are those alleged in the Amended Complaint, ECF No. 92, and are assumed true for purposes of this motion.

**I.** **Parties**

Plaintiff Teresa Spagna is a citizen of Illinois and the victim of Defendants' alleged negligence.

The National Fraternity is an Indiana non-profit corporation with its principal place of business in Indianapolis, Indiana. The National Fraternity oversees the operations of chapters such as Defendant Nebraska Beta Chapter of Phi Kappa Psi Fraternity (Chapter). The Chapter is authorized by the National Fraternity to initiate members into both the Chapter and the National Fraternity.

Park Avenue is a Nebraska non-profit corporation. It is managed by a board of directors composed of members of the Chapter and the National Fraternity. Park Avenue operates as the property manager of the Chapter's house located on Farnam Street in Omaha, Nebraska (Chapter House).

Defendant Gill is a citizen of Minnesota and, at all relevant times, was president of the Chapter. Defendants Taylor and Rezich are citizens of Nebraska and, at all relevant times, were officers of the Chapter. The remaining individual Defendants, who have not filed motions to dismiss, Daniel Tift, Jonah Buss, Cody Casper, Alan Anderson, and David

Meler, are citizens of Minnesota, Nebraska, California, Wisconsin, and Ohio, and were, at all relevant times, officers of the Chapter.

## II. Factual History

In 2016, Creighton University (Creighton) investigated reports of hazing and underage drinking within the Chapter. Following the investigation, Creighton determined that the Chapter violated provisions of Creighton's Student Conduct Policy, its Greek Event Guidelines, and state law. Creighton placed the Chapter on social probation as a result of these findings. The terms of the Chapter's probation required that the Chapter follow state and local law, as well as Creighton event guidelines, and educate its members about Creighton's drug and alcohol policies. The Chapter was also prohibited from the use of alcohol and drugs at its events, including rush[1] and initiation activities. The National Fraternity was informed of the results of Creighton's investigation and agreed to ensure the Chapter's compliance with the terms of its probation.

The National Fraternity did not take action to intervene in the Chapter's operations; the Chapter informed the National Fraternity that its rush and initiation activities, beginning in January 2017, would continue to include hazing and drug and alcohol use; and the National Fraternity encouraged these behaviors.

Christopher Wheeler participated in the 2017 rush and accepted a bid to join the Chapter. Wheeler then participated in the Chapter's initiation activities which began on January 30, 2017. Most initiation activities took place at the Chapter House. Throughout the initiation activities, new members—referred to as pledges—were required to

---

[1] "Rush" is the process by which fraternities solicit new members. A potential new member is given a bid—an offer to join—from any fraternity offering him membership. The recruit then accepts the bid to the fraternity he wishes to join.

3

surrender their cell phones and were instructed to keep all activities secret. New members, including those who were underage, were forced to consume alcohol to the point of vomiting and loss of consciousness. Sober drivers were used to bring the new members home. The activities also included physical violence, withholding of food and water, and a "slave auction." The National Fraternity encouraged these activities, and the individual Defendants conducted them.

On Friday, February 3, 2017, members of the Chapter tested the pledges on their knowledge of local and national Phi Kappa Psi trivia. The members told the pledges they would not be initiated to the Chapter if they failed. Wheeler failed the test. The pledges who failed the first test took the test again on February 10, 2017. When the test was over, members told pledges they must go to the Chapter House for more initiation events which included drinking.

At the Chapter House, members of the Chapter, including the individual Defendants, provided the pledges with alcohol and permitted them to bring their own. Throughout the night, the Chapter members and pledges consumed alcohol at the Chapter house and at a local bar, despite some of the pledges being underaged. Wheeler joined the individual Defendants in Gill's room where Gill provided Wheeler with more alcohol. A member of the Chapter then produced a water bong and Defendants required Wheeler to smoke marijuana in Gill's room.

Shortly before 1:00 a.m., Chapter members brought Wheeler to Creighton's campus and left him alone. People who knew Wheeler encountered him and noticed that he was confused, out of character, and belligerent. Wheeler wandered into Gallagher Hall around 1:00 a.m.

4

Spagna was a resident of Gallagher Hall. She left her door unlocked that night because she was ill, and her friends were going to check on her when they returned to campus. Wheeler entered Spagna's unlocked room and stood in place for several minutes despite Spagna asking him to leave. When Wheeler turned to leave, Spagna noticed that Wheeler had dropped his keys. Spagna grabbed Wheeler's keys and approached him to return them. As Spagna neared Wheeler, he turned and cut her across the neck with a pocketknife.

## III. Procedural History

Spagna brought this action on October 31, 2019. Compl., ECF No. 1. The Court granted motions to dismiss filed by Defendants Buss and the National Fraternity on February 12, 2020. Mem. & Order, ECF No. 78. Spagna filed an Amended Complaint on April 3, 2020. Am. Compl., ECF No. 92. Defendants Rezich and Taylor filed Motions to Dismiss on April 17, 2020. Defendant Gill filed a Motion to Dismiss on May 1, 2020. Defendants Park Avenue and the National Fraternity filed Motions to Dismiss on June 2, 2020.[2]

## STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy this requirement, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Corrado v. Life Inv'rs Ins. Co. of Am.*, 804 F.3d 915, 917 (8th Cir. 2015) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference

---

[2] Defendant Tift also filed a Motion to Dismiss, ECF No. 144, but withdrew the motion in accordance with the parties' stipulation, ECF No. 147.

5

that the defendant is liable for the misconduct alleged." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678), *cert. denied*, 135 S. Ct. 2941 (2015). The complaint's factual allegations must be "sufficient to 'raise a right to relief above the speculative level.'" *McDonough v. Anoka Cnty.*, 799 F.3d 931, 946 (8th Cir. 2015) (quoting *Twombly*, 550 U.S. at 555). The Court must accept factual allegations as true, but it is not required to accept any "legal conclusion couched as a factual allegation." *Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 373 (8th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678). Thus, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ash v. Anderson Merchandisers, LLC*, 799 F.3d 957, 960 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678), *cert. denied*, 136 S. Ct. 804 (2016).

On a motion to dismiss, courts must rule "on the assumption that all the allegations in the complaint are true," and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 555 & 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Mickelson v. Cnty. of Ramsey*, 823 F.3d 918, 923 (8th Cir. 2016) (alteration in original) (quoting *Iqbal*, 556 U.S. at 679).

**DISCUSSION**

The Amended Complaint alleges that Spagna was injured as a result of Defendants' negligence. Under Nebraska law, to state a claim for negligence, a plaintiff

must allege "a legal duty owed by the defendant to the plaintiff, a breach of such duty, causation, and damages." *A.W. v. Lancaster Cnty. Sch. Dist. 0001*, 784 N.W.2d 907, 913 (Neb. 2010) (citing *Ehlers v. State*, 756 N.W.2d 152 (Neb. 2008)).

**I.     Individual Defendants**

Rezich, Taylor, and Gill (Individual Defendants) argue the Amended Complaint does not adequately allege that they owed a duty to Spagna; that if they did, they did not breach that duty; and even if they did breach such a duty, their breach did not proximately cause Spagna's injuries. The Court need not address whether the Individual Defendants owed Spagna a duty because, even if they did, the risk of harm was not reasonably foreseeable.

Under Nebraska law, "in order to determine whether appropriate care was exercised, the fact finder must assess the foreseeable risk at the time of the defendant's alleged negligence." *Thomas v. Bd. of Trs. of Neb. State Colls.*, 895 N.W.2d 692, 699 (Neb. 2017) (citing *Pittman v. Rivera*, 879 N.W.2d 12 (Neb. 2016); *A.W.*, 784 N.W.2d 907). Nebraska law "does not require precision in foreseeing the exact hazard or consequence which happens; it is sufficient if what occurs is one of the kinds of consequences which might reasonably be foreseen." *Id.* at 700. "Although questions of foreseeable risk are ordinarily proper for a trier of fact, courts may reserve the right to determine that the defendant did not breach its duty, as a matter of law, if reasonable people could not disagree about the unforeseeability of the risk of the harm incurred." *Id.* (citing *Hodson v. Taylor*, 860 N.W.2d 162 (Neb. 2015)).

The Individual Defendants argue this case is like *Thomas*, 895 N.W.2d 692, and *Pittman*, 879 N.W.2d 12. In *Thomas*, the Nebraska Supreme Court found that it was unforeseeable that a student staff member for the Peru women's basketball team, Keadle,

7

would abduct, rape, and murder another student on the team. *Thomas*, 895 N.W.2d at 696. After Keadle was already employed by Peru, Peru's director of housing and security received an email stating that Keadle had previously been "convicted of robbery of $300 and stealing a purse, in '09 also has other burglary's [sic] but he was not charged for them, also has a forcible fondling (RAPE) on a 18yr old female charge on record, but the charges were droped [sic]." *Id.* at 696–97. The *Thomas* court found that "nothing in the record indicate[d] there was a risk that Keadle's conduct would result in the abduction, rape, and murder of another student." *Id.* at 701.

In *Pittman*, the Nebraska Supreme Court found that it was not foreseeable that an aggressive, intoxicated bar patron, Rivera, would drive back to the bar an hour after being forcibly removed due to a physical altercation, and strike a bystander with his vehicle. *Pittman*, 879 N.W.2d at 17. In *Pittman*, the court stated that "[i]n order to make a risk of attack foreseeable, the circumstances to be considered must have a direct relationship to the harm incurred." *Id.* The court observed that "Rivera's prior conduct at the bar that night (i.e. assaultive and threatening behavior toward [his girlfriend] and [the employee of the bar who forcibly removed Rivera]) was completely different in nature from his later actions that harmed [Plaintiff]." *Id.* In further considering the circumstances, the court noted that "[t]here was no evidence that Rivera knew [Plaintiff], that he had any reason to assault [Plaintiff], or that he would intentionally try to run over a person outside the bar." *Id.*

Spagna argues that the circumstances of this case are such that reasonable people could find it foreseeable that Wheeler would injure her. She argues that *Sundermann v. Hy-Vee, Inc.*, 929 N.W.2d 919 (Neb. Ct. App. 2019), is instructive as to how courts applying Nebraska law should examine the foreseeability of a type of injury.

8

In *Sundermann*, the Nebraska Court of Appeals reversed the district court's order granting summary judgment. *Id.* at 928. The district court found that there was no issue of material fact and as a matter of law, Hy-Vee, Inc. (Hy-Vee) did not breach its duty of care. The court of appeals found that the district court erred by "focus[ing] on the very narrow fact pattern present in this case, that being the foreseeability that a person's foot would slip off the brake pedal and inadvertently hit the gas pedal, resulting in the collision." *Id.* Instead, the court of appeals found "that a reasonable person could conclude that it was foreseeable to Hy-Vee that a vehicle could be operated in such a manner as to fail to observe a person such as [Plaintiff] utilizing the air compressor in the access drive area, resulting in a collision and injury." *Id.*

Spagna argues it was foreseeable that Wheeler "would enter a dormitory on Creighton's campus, and injure a Creighton resident." Pl.'s Br., ECF No. 120 at Page ID 643. As the *Pittman* court stated, "[i]n order to make a risk of attack foreseeable, the circumstances to be considered must have a direct relationship to the harm incurred." *Pittman*, 879 N.W.2d at 17. In *Thomas* and *Pittman*, the defendants were aware of or personally witnessed aggressive behavior by the third party who caused harm to the plaintiff. *Thomas*, 895 N.W.2d at 696–97 (stating defendant had knowledge of Keadle's prior robbery conviction, charged sexual misconduct, and uncharged burglaries); *Pittman*, 879 N.W.2d at 14 (stating defendant bar had knowledge of Rivera's physical altercation with his girlfriend and aggressive, assaultive behavior toward bar employees). Spagna does not allege the Individual Defendants were aware of any aggressive conduct by Wheeler, or that they had any reason to believe he would harm anybody, let alone that he would enter a private dorm room to do so. No reasonable person could find that, as a result of providing Wheeler with alcohol, the Individual Defendants reasonably could have

foreseen that he would enter a private dorm room and attack a student. Accordingly, Spagna's allegations do not present a plausible claim that the Individual Defendants breached any duty of reasonable care they may have owed to her.

## II. Corporate Defendants

The National Fraternity and Park Avenue (Corporate Defendants), argue that they did not owe Spagna a duty and, if they did, they did not proximately cause Spagna's injuries. Assuming for purposes of this motion that the Corporate Defendants owed Spagna a duty and that they breached that duty, the Court finds, as a matter of law, the Corporate Defendants did not proximately cause Spagna's injuries.

In Nebraska, there are three elements of proximate cause: "(1) but for the negligence, the injury would not have occurred, (2) the injury is the natural and probable result of the negligence, and (3) there is no efficient intervening cause."[3] *Baumann v. Zhukov*, 802 F.3d 950, 953–54 (8th Cir. 2015) (quoting *Heatherly v. Alexander*, 421 F.3d 638, 641–42 (8th Cir. 2005)). As with breach, "[a]lthough the question of proximate cause is ordinarily for the determination of the jury, where . . . only one inference can be drawn, it is for the court to declare whether a given act or series of acts is the proximate cause of the injury." *Shelton v. Bd. of Regents of Univ. of Neb.*, 320 N.W.2d 748, 754 (Neb. 1982) (quoting *Egenberger v. Nat'l Alfalfa Dehydrating & Milling Co.*, 83 N.W.2d 523, 532 (Neb. 1957)).

---

[3] "Superseding cause, sometimes called either intervening cause or efficient intervening cause, is a label sometimes applied to some kinds of proximate cause or concurring cause problems . . . ." NJI2d Civ. 3.43 cmt. I. "Proving the lack of an efficient intervening cause is a part of the burden of the party attempting to prove causation." *Id.* "While the [Nebraska] Supreme Court has disapproved of the separate [jury] instruction on the point, 'efficient intervening cause' does remain part of the vocabulary of the court." *Id.* at cmt. III (citing *Latzel v. Bartek*, 846 N.W.2d 153, 164 (Neb. 2014); *Johnson ex rel. Johnson v. Sch. Dist. of Millard*, 573 N.W.2d 116, 210 (Neb. 1998)).

The Corporate Defendants argue that Wheeler's criminal act was an efficient intervening cause under *Shelton*. According to *Shelton*, "[a]n efficient intervening cause is a new and independent force which breaks the causal connection between the original wrong and the injury." *Shelton*, 320 N.W.2d at 752. The *Shelton* court relied on the Second Restatement for the following declaration of law:

> The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.

*Id.* at 752–53 (quoting Restatement (Second) of Torts § 448).

In *Shelton*, several plaintiffs sued the Board of Regents of the University of Nebraska (Board of Regents) and the Eugene C. Eppley Institute for Research in Cancer and Allied Diseases (Eppley Institute) for negligence in connection with Eppley Institute's hiring of Steven Harper as a research technologist on March 1, 1978. Harper had been sentenced on December 6, 1976, to a term of one to five years for attempting to kill a woman, with whom he had an emotional relationship, and her husband. Harper was released on parole on November 16, 1977. In his position as a research technologist, Harper had access to dimethylnitrosamine, a highly lethal and carcinogenic drug used to induce cancer in lab rats. Sometime during his employment at the Eppley Institute, Harper stole some of the drug. After resigning his position, Harper broke into the home of the victims of his prior crime and placed the drug in lemonade and milk. Two people died and three became ill from the poison. Harper was ultimately convicted of first-degree murder as a result of the deaths. *Id.* at 750; *see State v. Harper*, 304 N.W.2d 663 (Neb. 1981).

The plaintiffs alleged the Board of Regents and the Eppley Institute were negligent in four ways: "(1) in hiring Harper; (2) in failing to control access to the poisonous drug by Harper; (3) in failing to maintain an inventory of the drug; and (4) in permitting the posting of the article describing the poisonous drug incident which occurred in Germany."[4] *Id.* at 751. The Court found that as a matter of law the Eppley Institute did not realize, nor should it have realized "the likelihood of Harper first stealing the poisonous drug and then unlawfully breaking into the [victims'] home and placing the poisonous drug into some lemonade and milk which was [sic] present in a refrigerator." *Shelton*, 320 N.W.2d at 753.

Spagna argues the Court should not apply *Shelton* because that decision relied on the Second Restatement, and the Nebraska Supreme Court appears to be adopting the Third Restatement. This argument fails because the Nebraska Supreme Court has not overturned *Shelton*, and it is not the role of this Court to do so.

Spagna also argues that other Nebraska cases are more applicable to the facts of this case and that, based on those precedents, she has successfully pleaded causation. She notes that in *Becerra v. Sulhoff*, 837 N.W.2d 104 (Neb. Ct. App. 2013), the Nebraska Court of Appeals stated "[t]he question of whether an act is a proximate cause, or simply a non-actionable condition, is determined by whether it was foreseeable that the initial act could join with the intervening act to cause the alleged injuries." *Id.* at 115 (quoting *Heatherly*, 421 F.3d at 641–43 (8th Cir. 2005)). This is the question the *Shelton* court addressed under section 448 of the Second Restatement. The *Shelton* court assumed, for the purposes of addressing causation, that the Board of Regents and the Eppley

---

[4] "[D]uring Harper's employment with Eppley Institute, an employee of the institute placed an article on the Eppley Institute's bulletin board, describing an incident in Germany where the poisonous drug was used to induce cancer and ultimate death in its victims." *Shelton*, 320 N.W.2d at 751.

12

Institute were negligent, but the court found that Harper's criminal conduct was an intervening cause. This was because the Board of Regents and Eppley Institute did not realize, nor should they have realized, that Harper would steal the drug, break into the victims' home, and poison their beverages. *Shelton*, 320 N.W.2d at 753.

Here, even if the Court assumes the Corporate Defendants owed a duty to Spagna and breached that duty by encouraging, requiring, or overseeing underage drinking at the Chapter House, the Corporate Defendants could not have foreseen that Wheeler would enter another student's dorm room and cut her with a knife. Wheeler's criminal acts were an efficient intervening cause of Spagna's injuries, and the Corporate Defendants' allegedly negligent acts did not proximately cause Spagna's injuries.

## CONCLUSION

Under Nebraska law, to state a cause of action for negligence a plaintiff must allege "a legal duty owed by the defendant to the plaintiff, a breach of such duty, causation, and damages." *A.W.*, 784 N.W.2d at 913 (citing *Ehlers*, 756 N.W.2d 152). Assuming the Individual Defendants owed Spagna a duty, Spagna's injuries were not foreseeable; therefore, Spagna has failed to state a claim against the Individual Defendants. Similarly, assuming the Corporate Defendants owed Spagna a duty and that they breached their duty, Wheeler's criminal acts were an efficient intervening cause. Therefore, the Corporate Defendants did not proximately cause Spagna's injuries.

Accordingly,

IT IS ORDERED:

1. The Motions to Dismiss filed by Defendants Brendan Rezich, ECF No. 107; Troy Taylor, ECF No. 109; Collin Gill, ECF No. 116; Park Avenue Phi Psi

House, Inc., ECF No. 129; and Phi Kappa Psi Fraternity, Inc., ECF No. 131, are granted;

2. This action is dismissed as against Defendants Brendan Rezich, Troy Taylor, Collin Gill, Park Avenue Phi Psi House, Inc., and Phi Kappa Psi Fraternity, Inc.; and

3. The Clerk of Court is directed to amend the caption to reflect the dismissal of these defendants.

Dated this 13th day of August 2020.

BY THE COURT:

s/Laurie Smith Camp
Senior United States District Judge